UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WOODBRIDGE STRUCTURED FUNDING,
LLC,
     Plaintiff,

     v.

STRUCTURED SETTLEMENT QUOTES,
GENEX CAPITAL, and GENEX
STRATEGIES, INC.,
     Defendants.

No. 3:14-cv-00214 (JAM)

**ORDER DENYING MOTION TO DISMISS (Doc. #27)**

Plaintiff, a company that provides lump sum and similar payments to recipients of
structured settlements and other periodic payment schemes, has filed suit against several
defendants who allegedly together violated federal and state law regarding false advertising and
unfair trade practices. One of those defendants, a Canadian corporation, has filed a motion to
dismiss the claims against it for lack of personal jurisdiction and for failure to state a cognizable
claim for relief. Although some of defendant's arguments may be shown to have merit at a later
stage in this litigation, I conclude that plaintiff has met its burden of making out a *prima facie*
case for personal jurisdiction at this initial stage and has adequately pled its claims against
defendant. Accordingly, for the reasons set forth below, I deny defendant's motion to dismiss.

BACKGROUND

Plaintiff Woodbridge Structured Funding, LLC ("Woodbridge") is a limited liability
company existing under the laws of Delaware, with its principal place of business located in
California. Plaintiff brings suit in this Court against defendants Structured Settlement Quotes

("SSQ"), Genex Capital ("GC"), and Genex Strategies, Inc. ("GSI") under the Lanham Act, 15

U.S.C. § 1051 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.

Stat. § 42-110g *et seq.* The amended complaint alleges that SSQ has its principal place of

business in Connecticut, that GC is a Maryland corporation with its principal place of business in

Maryland, and that GSI is a Canadian corporation with its principal place of business in Canada.

Plaintiff provides lump sum and other payments to customers who receive periodic

payments through structured settlements, mortgages, lottery winnings, and the like. According to

the amended complaint, SSQ purports to operate an online marketplace in which annuity holders

can sell their payments to funding companies whom SSQ advertises as "Certified Funders,

leading companies in the industry pre-approved by us." Doc. #15 at 5 (Am. Compl. ¶ 20). But in

fact, alleges plaintiff, only one named company is listed on the site as a Certified Funder—

Genex Capital ("GC"). Plaintiff alleges that SSQ fraudulently and deceptively advertises itself as

a neutral marketplace when its scheme is designed purposefully to benefit certain companies

(particularly GC) and to steer consumers away from competitors like plaintiff.

GSI and GC are closely linked, though just how close is not yet clear. The amended

complaint alleges that GSI owns the trademark "Genex Capital," that it owns and controls GC,

that the two do business as one another, and that the two share common ownership by Richard

Proctor—the President of GSI and CEO of GC. As of 2004, GSI and GC have had an exclusive

licensing agreement, through which GC has exclusive licensing rights to GSI's structured

settlement brokering through the SSQ website. And GSI has entered into at least two agreements

with SSQ itself: one in late 2011 for the purchase of domain names, including the SSQ website at

the heart of this case, and one for other, unidentified assets.

As of the filing of this Order, SSQ has not responded or entered an appearance in this

case. GC has answered the amended complaint with affirmative defenses and has waived any objection to personal jurisdiction. Doc. #26 at 2–3. GSI has responded with a motion to dismiss the claims against it. For the reasons set forth below, that motion (Doc. #27) is DENIED.

DISCUSSION

Defendant GSI seeks to dismiss this action for lack of personal jurisdiction and also for failure to state a claim. I consider each of these grounds for dismissal in turn.

**Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

Facing an objection to personal jurisdiction, a plaintiff bears the burden of demonstrating that the Court has jurisdiction over the nonresident defendant. *Troma Entertainment Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). At this early stage in the litigation, where discovery has not been completed (in fact, has barely begun) and there has been no evidentiary hearing on the issue of jurisdiction, "a plaintiff may establish a prima facie basis for personal jurisdiction through his 'own affidavits and supporting materials, containing an averment of facts, that if credited would suffice to establish jurisdiction over the defendant.'" *Preferred Display, Inc. v. Vincent Longo, Inc.*, 642 F. Supp. 2d 98, 100 (D. Conn. 2009) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

Personal jurisdiction by a federal court is governed in part by the law of the state in which the court sits. *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) (*per curiam*). Establishing personal jurisdiction over a foreign defendant requires a two-step inquiry: first, to determine whether the defendant is subject to jurisdiction under the law of the forum state— Connecticut; next, to evaluate whether asserting personal jurisdiction over the defendant is consistent with constitutional due process. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (*per curiam*).

The appropriate long-arm statute provision for consideration is Conn. Gen. Stat. § 33-929(e).[1] It provides: "Every foreign corporation which transacts business in this state in violation of section 33-920 shall be subject to suit in this state upon any cause of action arising out of such business." Unlike other long-arm provisions in the statute, this provision contains no residency requirement for the plaintiff bringing suit. *Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prods., Inc.*, 821 F. Supp. 2d 498, 502 (D. Conn. 2010). Section 33-920, which it references, prohibits a foreign corporation from "transact[ing] business in this state until it obtains a certificate of authority from the Secretary of the State." Conn. Gen. Stat. § 33-920(a). Therefore, § 33-929(e) "authorizes personal jurisdiction over a foreign corporation where: (1) the corporation has transacted business in Connecticut without having obtained a certificate of authority from the Secretary of State; and (2) the [plaintiff's] cause of action arises out of such business." *Preferred Display,* 642 F. Supp. 2d at 104.

GSI conceded at oral argument on this motion that it does not have a certificate of authority from the Secretary of State to transact business in Connecticut. Therefore, the Court must determine whether plaintiff has made a *prima facie* showing that GSI "transacts business" in Connecticut within the meaning of this statute and whether plaintiff's cause of action arises out of such business.

Although neither § 33-929 nor § 33-920 define what it means to "transact business," the term "is not broadly interpreted in Connecticut." *Mayhew*, 821 F. Supp. 2d at 502 (quoting *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 198 (D. Conn. 2002)); *see also*

---

[1] Neither of the alternative long-arm statutory provisions raised by the parties is applicable. First, Conn. Gen. Stat. § 52-59b(a) applies to foreign limited liability companies, not to a defendant like GSI that is a foreign company. *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 546, 89 A.3d 938 (2014) ("[W]e hold that our general long arm jurisdiction provision, § 52–59b, rather than our corporation specific long arm provision, § 33–929, applies to foreign LLCs."). Nor does Conn. Gen. Stat. § 33–929(f) apply here because by its terms it applies only to suits brought by a plaintiff "resident of this state or by a person having a usual place of business in this state."

*Ebm–Papst v. AEIO Med*, 2009 WL 291012, at *3 (D. Conn. 2009). "Whether . . . a foreign

corporation is transacting business in this state under [§ 33–920] must be determined on the

complete factual picture presented in each case." *Ryan v. Cerullo*, 282 Conn. 109, 128, 918 A.2d

867 (2007) (quoting *Eljam Mason Supply, Inc. v. Donnelly Brick Co*., 152 Conn. 483, 485, 208

A.2d 544 (1965)); *see also Yee v. Roofing by Classic Restorations*, 2011 WL 781104, at *3 (D.

Conn. 2011). The meaning of "transact[ing] business" under this statute is narrower than under

Connecticut's non-corporate long-arm statute. *Ryan*, 282 Conn. at 128–29 (citing *Zartolas v.

Nisenfield*, 184 Conn. 471, 476 n.4, 440 A.2d 179 (1981)).

Section 33-920 lays out a nonexhaustive list of activities that do not constitute transacting

business for purpose of the certificate requirement:

> (1) [m]aintaining, defending or settling any proceeding;
> (2) holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs;
> (3) maintaining bank accounts;
> (4) maintaining offices or agencies for the transfer, exchange and registration of the corporation's own securities or maintaining trustees or depositaries with respect to those securities;
> (5) selling through independent contractors;
> (6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts;
> (7) creating or acquiring indebtedness, mortgages and security interests in real or personal property;
> (8) securing or collecting debts or enforcing mortgages and security interests in property securing the debts;
> (9) owning, without more, real or personal property;
> (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature;
> (11) transacting business in interstate commerce.

Conn. Gen. Stat. § 33-920(b).

The amended complaint alleges that GC and GSI have, "directly or through [their] agent

SSQ, transacted business within the State of Connecticut . . . and regularly do[] or solicit[]

business within the State or derive[] substantial revenue from services rendered within the State."
Am. Compl. ¶ 9. Supporting its claim that GSI, through GC, transacts business in Connecticut,
plaintiff points out that GC's website states that it won first place in a Connecticut Law Tribune
readership survey, Doc. #41-1 at 4 (Darer Aff. Exh. A), and that it applied for approval of a
transfer of structured settlement payment rights in Connecticut Superior Court. Doc. #41-3 at
10–15 (Fortner Aff. Exh. E—application for approval of transfer). And while GC is the only
entity listed on SSQ's website and in the above materials, GSI itself has entered into at least two
agreements with SSQ, including one to purchase the domain name of the SSQ website that forms
the basis of the present litigation.

    Of course, the scope of GSI's activities in Connecticut is not at all clear, and it may well
be that when discovery is completed, the evidence will show that GSI's activities fall within one
of the exceptions listed in § 33-920(b) or that they otherwise fall outside the statute's definition
for "transact[ing] business." But the materials and allegations presented at this stage indicate, at
the very least, that there is a factual dispute as to what GSI's activities in Connecticut consisted
of and whether they would constitute "transact[ing] business" as alleged in the amended
complaint and as necessary to invoke jurisdiction pursuant to Conn. Gen. Stat. § 33-929(e).[2]

    "Once a plaintiff establishes that the defendant corporation meets this prerequisite [of
transacting business in Connecticut without valid certificate], a plaintiff must establish that its
cause [ ] of action arises out of the business that the foreign corporation conducted in
Connecticut." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 521 (D. Conn. 2011) (internal
quotation marks and citation omitted). "A cause of action arises out of the transaction of business
where the litigation 'bears some connection with the business conducted by the foreign

---

[2] Further factual development is necessary, in part, to determine whether GSI may be subject to personal
jurisdiction on the basis of an "alter ego" relationship with GC. *See Transfield ER Cape Ltd. v. Industrial Carriers,
Inc.*, 571 F.3d 221, 224 (2d Cir. 2009).

corporation in this state.'" *Ibid.* (quoting *Lombard Bros., Inc. v. General Asset Management Co*., 190 Conn. 245, 253, 460 A.2d 481 (1983)). "[T]he cause of action must be of the type that defendants would anticipate arising out of their Connecticut activities to support jurisdiction under [S]ection 33–929(e)." *Id.* at 522.

Here, plaintiff has made out a *prima facie* basis that its claims arise out of defendant's business in Connecticut: the business included purchasing structured settlements from Connecticut residents through its alleged collaboration with Connecticut resident SSQ, and this business is the basis for plaintiff's claims against defendant for violating the Lanham Act and CUTPA. But as with the "transacts business" prong, further factual development is necessary before the Court can assess conclusively whether this requirement is established.

Having found that plaintiff has made a *prima facie* case that defendant's intrastate activities meet the requirements of Connecticut's long-arm statute, the Court must evaluate whether it would offend due process to assert jurisdiction. *Sonera*, 750 F.3d at 224. The due process analysis for specific jurisdiction considers whether defendant has had sufficient contacts with Connecticut, as well as whether the assertion of personal jurisdiction is reasonable under the circumstances of this particular case. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 764 (2014) (Sotomayor, J., concurring in the judgment). At oral argument, GSI conceded that if the long-arm statute were satisfied, then there would not be a violation of due process. Plaintiff has adequately pled and supported a *prima facie* basis for personal jurisdiction over GSI.[3]

Furthermore, it is not clear that there is any harm to allowing the case to proceed through discovery with the understanding that jurisdictional arguments may be raised at a later time. GSI

---

[3] I recognize that an ultimate determination of personal jurisdiction may possibly turn on an evaluation of the underlying SSQ website and whether it was "passive" or "active." *See, e.g.*, *Potts v. Septic Heater Co.*, 632 F. Supp. 2d 190, 193 (D. Conn. 2009). There are no factual allegations or averments regarding these specifics in the amended complaint or supplementary exhibits, and I therefore make no finding as to that consideration at this time.

and GC share counsel, many of the same officers, and, it appears, a good deal of the relevant business to this case; the discovery obligations to plaintiff should not be substantially different whether or not claims against GSI were dismissed from the case.

### Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

I therefore move to consideration of whether plaintiff has stated cognizable claims against GSI under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff makes two claims against GSI: (1) contributory infringement of SSQ's alleged Lanham Act violations and (2) a violation of CUTPA.

Regarding contributory infringement, plaintiff alleges the following:

56. Defendant Genex Capital and Genex Strategies each knowingly and intentionally participated, and/or induced SSQ to or suggested that it engage, in the wrongful activities set forth in paragraphs SSQ, including but not limited to those acts of false advertising, unfair competition, trade defamation, deception and other conduct set forth above in paragraphs 14 through 54.

57. Defendants Genex Capital and Genex Strategies, further, each is and has been a knowing and active beneficiary of the wrongful activities of SSQ, as set forth above.

58. By virtue of the foregoing, Defendants Genex Capital and Genex Strategies are each liable under 15 U.S.C. § 1125(a) and 1117(a), for contributory infringement.

Am. Compl. ¶¶ 56–58. To be liable for contributory infringement under the Lanham Act, a defendant must have (1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (internal quotation marks and citation omitted). "For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which

particular listings are infringing or will infringe in the future is necessary." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). The amended complaint alleges that GSI "knowingly and intentionally participated, and/or induced SSQ to or suggested that it in engage, in the wrongful activities [set forth to state claims against SSQ under the Lanham Act]." Am. Compl. ¶ 56. These allegations are sufficient to state a claim for contributory infringement.

As for its CUTPA claims, plaintiff alleges that:

62. SSQ's actions as set forth above, including but not limited to its adoption, use and promotion of its false and misleading website, its false statements regarding Woodbridge, its false claims of neutrality, and its creation and use of the unilaterally created and deceptive category of "Certified Funders," were undertaken in the course of its trade and business, and placed SSQ in direct competition and conflict with Plaintiff.

63. SSQ's actions, as set forth above, are in violation of or offend public policy, including but not limited to by virtue of their violation of 15 U.S.C § 1125(a).

64. SSQ's actions, as set forth above, constitute unfair or deceptive trade practiced in the conduct of trade or commerce, within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, or is substantially injures to consumers, competitors, and other businesspersons.

65. SSQ's aforementioned conduct has caused and will continue to cause substantial monetary injury to competitors and business persons in the same industry, which could not reasonably have been avoided and is not outweighed by any countervailing benefit to consumers, competitors or other businesspersons.

66. Defendants Genex Capital and Genex Strategies direct, actively participated in, lended aid to, ratified, and benefited from the wrongful, unfair, unscrupulous and unethical conduct of SSQ, each is thus liable for the unfair and deceptive trade practices set forth above.

67. As a direct and proximate result of the violations of CUTPA by the Defendants, Plaintiff has suffered an ascertainable loss of money in its trade and business.

Am. Compl. ¶¶ 62–67.

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce," Conn. Gen. Stat. § 42-110b, and provides for

a private cause of action to "any person who suffers any ascertainable loss of money or property,

real or personal, as a result of the use or employment of a method, act or practice prohibited by

section 42-110b." *Id.* at § 42-110g. The standard for determining whether a business practice

violates CUTPA is:

> (1) [W]hether the practice, without necessarily having been previously considered
> unlawful, offends public policy as it has been established by statutes, the common
> law, or otherwise-whether, in other words, it is within at least the penumbra of
> some common law, statutory, or other established concept of unfairness; (2)
> whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it
> causes substantial injury to consumers [competitors or other businessmen].

*Journal Publishing Co. v. Hartford Courant Co*., 261 Conn. 673, 695, 804 A.2d 823 (2002)

(brackets in original) (quotation marks and citation omitted). A plaintiff must also allege that the

actions of the defendant were performed in the conduct of trade or commerce, and cannot allege

a CUTPA violation "for activities that are incidental to an entity's primary trade or commerce."

*Sovereign Bank v. Licata*, 116 Conn. App. 483, 493–94, 977 A.2d 228 (2009) (internal quotation

marks omitted). Finally, a plaintiff "must demonstrate that she has suffer[ed] any ascertainable

loss of money or property, real or personal." *McLoughlin v. People's United Bank, Inc*., 2009

WL 2843269, at *7 (D. Conn. 2009) (internal quotation marks omitted) (quoting *Maguire v.*

*Citicorp Retail Services, Inc.*, 147 F.3d 232, 238 (2d Cir. 1998)).

"Although plaintiffs are not required to prove a specific amount of actual damages to

make out a *prima facie* case under the CUTPA, the ascertainable loss requirement is a threshold

barrier that must be satisfied in order to state a CUTPA claim." *Maguire*, 147 F.3d at 238

(internal quotation marks and citation omitted). The term "loss" "necessarily encompasses a

broader meaning than the term damage," and "for purposes of § 42–110g, an ascertainable loss is

a deprivation, detriment or injury that is capable of being discovered, observed or established. A

10

loss is ascertainable if it is measurable even though the precise amount of the loss is not known. Under the CUTPA, there is no need to allege or prove the amount of the actual loss." *Marinos v. Poirot*, 308 Conn. 706, 714, 66 A.3d 860 (2013) (internal quotation marks, citations, ellipses, and brackets omitted). And, even where a plaintiff does not allege a specific ascertainable loss with respect to each violation of public policy or law on which her CUTPA claim is based, a plaintiff still states a claim under the CUTPA when she alleges an ascertainable loss caused by defendant's overall conduct. *Bruce v. Home Depot, U.S.A., Inc*., 308 F. Supp. 2d 72, 79 (D. Conn. 2004).

Plaintiff's allegations describe unfair methods of competition and acts of deception in violation of public policy, acts occurring in the primary business of structured settlement purchasing by SSQ, GC, and GSI, and an ascertainable monetary loss; moreover, plaintiff specifically alleges that GSI "direct[s], actively participated in, lended aid to, ratified, and benefited from the wrongful, unfair, unscrupulous and unethical conduct . . . ." Am. Compl. ¶ 66. These allegations are sufficient to state a CUTPA claim against GSI.

### CONCLUSION

For the foregoing reasons, defendant GSI's motion to dismiss (Doc. #27) is DENIED. This ruling is without prejudice to defendant's right to renew its personal jurisdiction arguments at a later time as any additional evidence may warrant.

It is so ordered.

Dated at Bridgeport this 2nd day of December 2014.


/s/_____
Jeffrey Alker Meyer
United States District Judge

11